## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AFSCME DISTRICT COUNCIL 33, LOCAL 427, by its guardian ad litem, CHARLES CARRINGTON, PRESIDENT; KASHIF CAMPBELL; TIMOTHY JACKSON, DAMON RANDOLPH, in their individual capacities;<br><br>        Plaintiffs,<br><br>   v.<br><br>THE CITY OF PHILADELPHIA, its Officials, Agents, Employees and Assigns; JIM KENNEY, in his official capacity as Mayor of the City of Philadelphia; ROB DEBOW, in his official capacity as Finance Director of the City of Philadelphia; JACQUELINE DUNN, in her official capacity as Treasurer of the City of Philadelphia<br><br>        Defendants. | Civ. A. No. |

## **COMPLAINT**

Plaintiffs AFSCME District Council 33, Local 427 ("Local"), by its

Guardian ad litem, Charles Carrington, President, and well as Kashif Campbell,

Timothy Jackson, and Damon Randolph, in their individual capacities, by their

undersigned counsel, file this Complaint. Based on the illegal actions of Defendants, Plaintiffs seek mandamus and declaratory relief for violations of the Philadelphia Home Rule Charter ("Home Rule Charter"), and monetary and liquidated damages as well as declaratory and equitable relief for violations of the Fair Labor Standards Act ("FLSA").

These violations arose from the Defendants' failure to properly implement and oversee the OnePhilly payroll system, which deprived bargaining unit employees of the Local as well as the individually-named plaintiffs (1) timely, proper, and accurate payment of earned wages and other payments due and owing to them, including the payment of minimum wage and overtime; (2) deductions to those earned wages authorized by the Local's bargaining unit employees and required by taxing authorities; and (3) remittance of authorized deductions to the appropriate entity.

Defendants and their agents' failures to properly implement and oversee the OnePhilly payroll system resulted in bargaining unit employees of the Local suffering (1) lack of payment or late payment of wages and other renumeration due and owing, (2) the imposition of fees, costs, and other expenses arising from Defendants' failure to timely, properly, and accurately pay the Local's bargaining unit employees, and/or (3) the loss of benefits or other privileges arising from Defendants' failure to timely, properly, and accurately pay all wages and other

renumeration and make all deductions from the payroll of bargaining unit employees of the Local and remit the same to the appropriate party as required by the Home Rule Charter and/or the FLSA.

## NATURE OF ACTION

1.     The Local seeks mandamus relief, ordering Defendants, as required by the Home Rule Charter, to promptly pay all unpaid earnings due and owing to bargaining unit employees represented by the Local, along with statutory interest.

2.     The Local seeks mandamus relief, ordering Defendants, as required by the Home Rule Charter, to promptly deduct all unpaid, agreed-upon deductions, including local, state, and federal taxes, as authorized by employees represented by the Local or under local, state, and federal law, and remit those sums to the appropriate entity, along with payment of any penalties suffered by bargaining unit employees for failure of Defendants to do the same.

3.     The Local seeks a declaration from this Court that Defendants violated the Home Rule Charter with their failure to promptly pay all unpaid earnings due and owing to bargaining unit employees represented by the Local.

4.     The Local seeks a declaration from this Court that Defendants violated the Home Rule Charter by failing to promptly deduct all unpaid, agreed-upon deductions, including local, state, and federal taxes, as authorized by employees represented by the Local, and remit those sums to the appropriate taxing authority,

along with payment of any penalties suffered by the employees for failure of Defendants to do the same.

5.      Plaintiff Timothy Jackson seeks any and all monetary or liquidated damages, as well as attorneys' fees, under the FLSA for failure to timely pay, or at all, minimum wages due and owing to him after Defendant City of Philadelphia ("Defendant City") implemented the OnePhilly payroll system.

6.      Plaintiffs Kashif Campbell and Damon Randolph seek any and all monetary or liquidated damages under the FLSA for failure to time pay, or at all, overtime due and owing for hours they worked in excess of forty (40) hours in any given work week after Defendant City implemented the OnePhilly payroll system.

7.      Plaintiff Timothy Jackson asserts a collective action on behalf of a proposed collective under Section 216 of the FLSA, seeking monetary and liquidated damages against Defendant City, for failure to timely pay, or at all, minimum wages due and owing for those employees who consent to join this claim.

8.      Plaintiffs Kashif Campbell and Damon Randolph assert a collective action on behalf of a proposed collective under Section 216 of the FLSA, seeking monetary and liquidated damages against Defendant City, for failure to timely pay, or at all, overtime wages due and owing for those employees who consent to join

this claim.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §
1331 and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*., and over the
pendent state claims pursuant to 28 U.S.C. § 1367.

10.     This Court is authorized to enter declaratory and injunctive relief
pursuant to 29 U.S.C. §§ 216(b) of the FLSA and the Declaratory Judgment Act,
28 U.S.C. §§ 2201 and 2202.

11.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2)
and (d) because a substantial part, if not all, of the events or omissions giving rise
to the claim occurred in this district.

## PARTIES

12.     Plaintiff AFSCME District Council 33, Local 427 ("Local") is an
unincorporated labor organization within the meaning of § 301 of Act 195 (43
P.S. §1101.101 *et seq.*) and the exclusive representative for collective
bargaining purposes for the sanitation workers of the Philadelphia Department of
Streets ("Streets Department").  The Local maintains its headquarters at 3001
Walnut Street, Philadelphia, PA 19104.

13.     Plaintiff Charles Carrington is the Guardian Ad Litem for Plaintiff

AFSCME Local 427 and its elected President ("President Carrington"). Plaintiff Carrington's office address at AFSCME Local 427 is 3001 Walnut Street, Philadelphia, PA 19104.

14.    Plaintiff Kashif Campbell ("Campbell") is an adult individual who is an employee of Defendant City working for the Streets Department and a member of the Local. He resides at 2046 S. 22nd Street, Philadelphia, PA 19145.

15.    Plaintiff Timothy Jackson ("Jackson") is an adult individual who is employee of Defendant City working for the Streets Department and a member of the Local.  He resides at 3133 North 28th Street, Philadelphia, PA 19129.

16.    Plaintiff Damon Randolph ("Randolph") is an adult individual who is an employee of Defendant City working for the Streets Department and a member of the Local.  He resides at 5952 Alma Street, Philadelphia, PA 19149.

17.    Hereinafter, Plaintiffs Campbell, Jackson, and Randolph are collectively referred to in this Complaint as "Individual Plaintiffs."

18.    Defendant City of Philadelphia is a City of the First Class within the meaning of the First-Class City Code, 53 P.S. §§ 13101 *et seq.,* and in accordance with the Philadelphia Home Rule Charter, 351 Pa. Code §§ 1.1-100 *et seq.* Defendant City also is a public employer within the meaning of the of §301(1) of Act  195 (43 P.S. §1101.101 *et seq.*).  Included under the rubric of Defendant

6

City government is the Mayor, the Finance Director, and the Treasurer.

19.     Defendant Jim Kenney ("Mayor Kenney") is the elected Mayor of Defendant City.  His office is at City Hall, Room 215, Philadelphia, PA  19107. Under the Home Rule Charter, the Mayor appoints agency heads and commissioners for the various departments of Defendant City government, including the Director of Finance. He has ultimate authority over these agencies and departments.

20.     Defendant Rob Dubow ("Director Dubow") is the appointed Director of Finance of Defendant City.  His office is at 1401 JFK Boulevard, Municipal Services Building, Room 1330, Philadelphia, PA  19102.  Under the Home Rule Charter, the Mayor appoints the Director of Finance, who serves at the Mayor's discretion and is responsible for the financial, accounting, and budgeting functions of the executive branch of Defendant City, including authorizing and administering its payroll.

21.     Defendant Jacqueline Dunn ("Acting Treasurer Dunn") is the appointed Treasurer of Defendant City.  Her office is at 1401 JFK Boulevard, Municipal Services Building, Room 640, Philadelphia, PA  19102.  Under the Home Rule Charter, the Director of Finance appoints the Treasurer of Defendant City with the approval of the Mayor. The City Treasurer serves at the Director of

Finance's discretion and is responsible for printing and distributing the checks or initiating electronic transfers authorized by the Director of Finance, including payroll checks.

## FACTUAL ALLEGATIONS

**A.     Implementation of OnePhilly and Ensuing Payroll Problems**

22.     On information and belief, Defendant City spent over $44 million to purchase and operate a new payroll system called OnePhilly to perform certain administrative and operational functions, including payroll.

23.     Before OnePhilly was implemented, Defendant knew the system had major flaws and was not ready to be rolled out.

24.     During the design states of the OnePhilly system, it was known that a mistake in the OnePhilly system could cause an employee to be underpaid or unpaid, while a mistake in the old payroll system would not cause the same error.

25.      In July 2018, it was reported that the OnePhilly system would not go into effect until all implementation issues were resolved.

26.     Despite the clear warnings that OnePhilly was not ready, on or on or about March 25, 2019, Defendant City implemented OnePhilly to do payroll for its employees, including the bargaining unit employees of the Local.

27.     After its introduction and until the present, Defendant City has

failed to properly pay bargaining unit employees of the Local, thus depriving them of earned wages and other payments due and owing to them pursuant to the relevant collective bargaining agreement and the Home Rule Charter.

28.    Defendant City also refused or failed to properly make, in the proper amount or at all, authorized deductions to bargaining unit employees' paychecks, including deductions for union membership dues, and contributions to the District Council 33 health and welfare fund or medical insurance.

29.    Upon information and belief, these very serious payroll problems have resulted in many Defendant City employees represented by the Local (and other Defendant City employees) being underpaid, incorrectly paid, or not paid at all, over multiple pay periods.

30.    The payroll problems are widespread, affecting many bargaining unit employees of the Local who are in the lowest wage classification and can ill afford being deprived of their wages due and owing to them.

31.    Such errors have occurred on a repeated basis since the first paycheck was issued through the OnePhilly payroll system beginning in April 2019 and include but are not limited to the following categories of payroll deficiencies:

a.    Defendant City failed or refused to pay employees at least

minimum wage or overtime in a timely manner or at all.

   b.      Defendant City has failed or refused to calculate and pay employees at the appropriate pay rates.

   c.      Defendant City has improperly directed automatic, electronic payroll checks into accounts that are held by a person who is not the payee of the payroll funds, resulting in the actual payee not receiving his or her earned wages.

   d.      Defendant City has failed or refused to pay overtime or use the correct overtime rates in making overtime payments.

   e.      Defendant City has failed or refused to pay some overtime promptly due its decision to prioritize closing payroll on a Monday over including time worked in the weekend immediately preceding the close.

   f.      Defendant City has failed or refused to properly calculate and pay longevity pay to bargaining unit employees of the Local.

   g.      Defendant City has failed or refused to reinstate benefits to employees returning to work after extended absences.

   h.      Defendant City has failed or refused to pay holiday pay, or, in cases where payments have been made, the Defendant City has incorrectly calculated the rate.

   i.      Defendant City has failed or refused to pay bargaining unit employees at the correct pay step.

j.      Defendant City has failed or refused to pay the proper shift differential or out-of-classification pay.

k.      Defendant City has failed to timely pay terminal leave pay, *i.e.*, reimbursement for earned but unused sick and vacation pay for bargaining unit employees who retire or voluntarily resign.

l.      Defendant City has failed to timely, properly, and accurately deduct union dues from union members' pay and remit the same to the appropriate bargaining agent.

m.      Defendant City has improperly deducted union dues from employees' pay who are not union members.

n.      Defendant City has failed or refused to deduct medical premium deductions, sometimes resulting in the employee not having medical insurance.

o.      Defendant City has made deductions from employees without any explanation about the nature of the deductions.

p.      Defendant City has failed or refused to accurately calculate and report year-to-date earnings on employee pay stubs.

q.      Defendant City has failed or refused to accurately calculate and report the current amount of paid time off employees possess, resulting in some of those employees fearful to take leave time as it may result in a determination that

11

the employee is AWOL.

       r.     Defendant City has failed to properly calculate and implement employee payroll deductions and withholding of tax.

32.    Beginning on or about April 5, 2019, Defendant City failed to timely provide Plaintiff Timothy Jackson wages for straight-time hours worked for the Streets Department and therefore no minimum wage in the immediately preceding pay period, in violation of the Home Rule Charter and the FLSA.  To date, Defendant City has not corrected this failure to pay this Plaintiff.

33.    Beginning on or about April 5, 20219, Plaintiffs Kashif Campbell and Damon Randolph received no overtime for hours they worked in excess of forty (40) hours in a work week for Defendant City's Streets Department, in violation of the Home Rule Charter and the FLSA.  To date, Defendant City has not corrected this failure to pay overtime.

34.    Upon information and belief, other bargaining unit employees of the Local have experienced the same payroll problems as the Individual Plaintiffs.

35.    Bargaining unit employees represented by the Local have been subjected to late fees, bank charges and additional interest assessments from creditors whom they have been unable to pay because of these repeated payroll errors. Because of Defendant City's continuing inability or unwillingness to meet its obligation to timely, properly, and accurately pay the bargaining unit employees

of the Local, the Local's professional staff have spent significant hours attempting to correct and reconcile employees' payroll problems, which they could otherwise spend on representing the bargaining unit employees on other issues.

36.     Defendant City's failure to meet its payroll obligations has left the Local unable to determine whether dues have been appropriately collected by Defendant City and remitted to the Local.

37.     On information and belief, Defendant City possesses enough cash on hand to meet its payroll obligations for all its employees.

38.     Defendant City cannot state whether or when its OnePhilly payroll system will timely, properly, and accurately pay bargaining unit employees all wages due and owing to them in a timely, proper, and accurate manner.

39.     Failure to pay bargaining unit employees of the Local all wages due and owing causes them extreme financial hardship.

**B.     City Controller's Audit of the OnePhilly Payroll System**

40.     On June 24, 2020, the City Controller, Rebecca Rhynhart, released an audit performed by EisnerAmper of the OnePhilly payroll system. The Audit was titled, "OnePhilly System Review Fiscal Year 2019" (hereinafter "Audit"). The Audit is divided into two separate sections.  (1) OnePhilly's IT General Controls and Application Controls and (2) Error Identification and Analysis.  A true and correct copy of the Audit is attached to this Complaint as Exhibit "A."

13

41. The Audit noted multiple problems with the OnePhilly payroll system, which included, but was not limited to, the following:

a. Controller Rhynhart states in her cover letter to the Audit that there remain excessive duplication of efforts and the potential of human error:

> The Streets Department … continued to use parallel systems for time entry and there seems to be no concerted efforts to integrate these departments into OnePhilly. For example, hours for approximately 1,200 Streets Department employees (sanitation workers) are tracked in the filed by clerks using paper timesheets that are entered into the Streets system, ISIS. Payroll clerks then print those timesheets from ISIS and manually re-enter the data into OnePhilly daily –a time-consuming and redundant process with the potential for human error.

b. The Executive Summary of the first section of the Audit raises the specter of the potential inaccuracy of the payroll of individual employees:

> Multiple breakdowns were identified in the functionality and application controls of the OnePhilly system. As a result of these breakdowns, the payroll expense and other related liability accounts could be materially misstated in the City's Comprehensive Annual Financial Report, constituting a material weakness. Additionally, individual employee's pay may be inaccurate or unauthorized.

c. The Executive Summary of the first section of the Audit admits that the OnePhilly payroll system

> had no formal process for reporting, tracking and resolving errors. No audit trail to identify all reported payroll errors and corresponding resolutions has been kept by OnePhilly…. Importantly, approximately one in five payroll payments appears to have required some form of retroactive or miscellaneous adjustment to time and/or pay [since implementation of OnePhilly].

d. The second section of the Audit states that forty-five percent

(45%) of employees working in the Streets Department—which include the

bargaining unit employees of the Local, had retroactive adjustments to their pay

checks from April 2019 until the end of June 2019.  *See* Audit, p. 27.

> e.   In the end, the Audit makes several recommendations,

including:

- Work to proactively identify and resolve all errors in employee pay, leave balances, accruals, etc. This effort should include reviewing individual cases reported to and/or addressed by the OnePhilly Team for similar underlying issues citywide.

- Conduct a comprehensive, systemwide analysis to proactively identify all potential over- and under-payments to employees, including total amounts owed by or due to the City. Document all such analyses performed, as well as any analysis contemplated but otherwise unable to be performed due to data or system limitations.

*See* Audit, p. 46.

> f.   Upon information and belief, none of the Audit's

recommendations were enacted by the City.

## C.   Local's Collective Bargaining Agreement and the City's Violation of the Same

42.   Defendant City and the Local are, and have been, parties to a

series of collective bargaining agreements negotiated pursuant to Act 195,

which set forth the terms and conditions of employment for City employees

represented by AFSCME District Council 33 and the Local.

43.   The current collective bargaining agreement between Defendant

City and District Council 33, including Local 427, covers July 1, 2020 through June 30, 2021, and calls wage increases of two percent (2%) effective May 2020 for all bargaining unit employees who are not correctional officers. <u>See</u> Exhibit "B."

44.     A true and correct copy of all prior agreements between Defendant City and District Council 33, including Local 427, including the last integrated collective bargaining agreement is attached hereto as Exhibit "C" and is incorporated in its entirety. Hereinafter, Exhibits "B" and "C" will be collectively referred to as the "Agreement."

45.     The Agreement expressly recognizes the Home Rule Charter and the Philadelphia Civil Service Regulations.

46.     Through Act 195, Defendant City is legally bound and obligated to comply with the terms of the Agreement.

47.     The Agreement sets forth wage rates for the various job classifications in each bargaining unit. The agreements also include provisions for overtime pay, shift differentials, longevity pay, uniform allowances, out-of-classification pay, life insurance benefits, as well as provisions regarding holiday, vacation and sick leave.

48.     Defendant City's failure to comply with the wage provisions of the negotiated Agreement undermines the Local's integrity and diminishes its

credibility in the eyes of their members and its ability to enforce the Agreement, thereby interfering with the Local's relationship with its members.

49.    Defendant City's failure to pay the employees in accordance with the terms of the Agreement constitutes a violation of that Agreement and is contrary to its own regulations.

50.    The Local has advised Defendant City that it is obligated to pay all affected employees the sums presently due and owing and to implement payroll deductions consistent with the authorizations chosen by bargaining unit employees of the Local and required by tax authorities.

51.    The Local has further demanded that when bargaining unit employees are improperly paid or not paid at all that Defendant City pay these sums promptly.

52.    Despite being informed about payroll problems of the Local's bargaining unit employees, Defendant City has failed and neglected to correct those payroll problems promptly or at all or ensure the Local that Defendant City will comply with its legal and ministerial duty to pay its employees all sums due and owing and make all necessary and authorized payroll deductions and remit the same to the appropriate party .

**D.    Home Rule Charter and the City's Violation of the Same**

53.    The Home Rule Charter directs the Executive Branch of Defendant

City to create a civil service system for all City employees.  Section 7-100 reads in pertinent part:

> The Personnel Director shall prepare, and after their adoption, administer the civil service program under the civil service regulations.  He shall
>
> (a) Establish and maintain a roster of all employees of the City, whether or not in the civil service, in which there shall be set forth, as to each employee, the class title of the position held, the salary or pay, any change in class title, pay or status, and other pertinent data;
>
> (b) In accordance with the position classification plan contained in the civil service regulations upon their taking effect, allocate the position of every employee in the civil service to one of the positions in the plan. He shall afford a reasonable opportunity to be heard to any employee affected by the allocation of a position to a class upon the written request of such employee for reconsideration thereof;
>
> (c) Investigate from time to time the operation and effect of the civil service provisions of this charter and report his findings and recommendations to the Mayor and the Civil Service Commission.

351  Pa. Code § 7-100.

54.    The Home Rule Charter requires that "[s]alaries of officers and employees who are paid out of the City Treasury shall be paid in equal bi-weekly installments."  351 Pa. Code § 20-301.

55.    The Home Rule Charter assigns the duty of transmission of payroll checks to the City Treasurer when such checks are authorized by the

Director of Finance.  It states in pertinent part:

> Payroll checks are to be delivered to the officer or agency
> on whose requisition they were drawn to assure their
> delivery to the person who allegedly performed the
> services and that the services were in fact performed. The
> delivery of all other checks is made subject to the
> direction of the Director of Finance so that he can from
> time to time prescribe that method of delivery which will
> best protect the interests of the City and the rightful
> payee. Unless the Director of Finance prescribes
> otherwise, the Treasurer may deliver or mail checks to
> payees.

351 Pa. Code § 6-301(2).

56.     Pursuant to the Home Rule Charter, Defendant City has adopted a

pay plan for all employees which expressly acknowledges that the contents

thereof, including specific salaries, are subject to the "applicable collective

bargaining agreements."  351 Pa. Code § 22-105(4.1).

57.     The Home Rule Charter assigns the duty to implement payroll

deductions and withholding from employee payroll checks to the Director of

Finance.  It states in pertinent part:

> The Director of Finance *shall*, as authorized or directed
> from time to time by the Code, deduct and withhold from
> the salary or wages of any employee of the City, such
> sum as the employee may authorize, or as may be
> directed by the Code and shall pay over such deductions
> to the designated payee.

351 Pa. Code § 19-203(1) (emphasis added).

58.     The Home Rule Charter requires that any authorized deductions be in writing.  It states in pertinent part:

> Authorization for payroll deductions shall be made by employees in writing upon forms prescribed and furnished by the Director of Finance, and authorized deductions shall be made at such time in such manner as the Director of Finance may establish.

351 Pa. Code § 19-203(2).

59.     The Home Rule Charter specifically authorizes payroll deductions to AFSCME District Council 33, the Board of Pensions and Retirement, and charitable agencies approved by the Administrative Board, and life insurance for employees represented by AFSCME District Council 33.  *See* §§ 19-203(4)(a), 19-203(4)(i), and 19-203(5).

60.     The Home Rule Charter also provides that bargaining unit members of the Local may authorize payroll deductions for the purchase of life insurance.  *See* §§ 19-203(9), 19-203(12).

61.     The Local has an interest and a duty to police the wage provisions of each respective Agreement and in upholding those statutorily and contractually protected rights conferred on their members by the agreements.

62.     The Local also has an interest and a duty to ensure that the City does not violate any law and fulfills its statutory and contractual obligations

20

owed to Defendant City's employees represented by the Local.

## COUNT 1 – MANDAMUS
## (UNDER PENNSYLVANIA LAW)

63.     Plaintiffs hereby incorporate Paragraphs 1 through 62 herein as though set forth in their entirety.

64.     Defendant City is subject to a non-discretionary duty under the Home Rule Charter and the regulations promulgated thereunder to timely pay employees' earned wages which are due and owing, and to deduct and withhold from payroll checks amounts authorized by employees and required by tax authorities.

65.     Defendant City has breached this duty by its persistent failure and refusal to timely, properly, and accurately pay employees and administer payroll deductions, despite protests by the Local and its members.

66.     Defendant City offers no other reason to justify its failure to timely, accurately, and properly pay its employees and administer payroll deductions or claim that doing so is impossible or impracticable.

67.     The Local has a clear legal right to have Defendant City fulfill its payroll and payroll deduction obligations to the Local and the employees it represents.

68.     Where a political subdivision breaches a nondiscretionary duty to perform a ministerial function, mandamus is appropriate as a matter of law.

69.     In order to end the continual payroll problems arising from OnePhilly, the Local and the bargaining unit employees it represents have no other adequate remedy at law but to compel Defendant City to discharge its legal duty.

70.     Based on the averments set forth in this Complaint, the right to mandamus relief is clear.

**WHEREFORE**, based on the foregoing allegations, Plaintiff requests the Court to order the following relief:

a.      Issue mandamus relief ordering Defendants consistent with the Home Rule Charter to immediately pay all sums due and owing to the bargaining unit employees represented by the Local, plus interest;

b.      Issue mandamus relief ordering Defendants consistent with the Home Rule Charter, to immediately deduct all agreed-upon deductions as authorized by employees represented by the Local or required by taxing authorities and remit those sums to the appropriate entity and pay any penalties or fees arising from delay in the remittance.

<u>**COUNT  II**</u>
**REQUEST FOR DECLARATORY RELIEF**
**UNDER PENNSLVANIA LAW**
**(All Plaintiffs v. All Defendants)**

71.     Plaintiffs hereby incorporate Paragraphs 1 through 70 herein as though set forth in their entirety.

72.     Defendant City is subject to a non-discretionary duty under the Home Rule Charter and the regulations promulgated thereunder to timely pay employees' earned wages which are due and owing, and to deduct and withhold from payroll checks amounts authorized by employees and required by tax authorities.

73.     The City has breached this duty by its persistent failure and refusal to pay employees and administer payroll deductions, despite protests by the Local and its bargaining unit employees.

74.     The City does not offer any reason to justify its failure to timely, accurately, and properly pay its employees and administer payroll deductions or claim that doing so is impossible or impracticable.

75.     The Local has a clear legal right to have the City fulfill its pay and payroll deduction obligations to the Local and the employees it represents.

**WHEREFORE**, based on the foregoing allegations, Plaintiffs request this Court to order the following relief:

a.     Declare Defendants violated the Home Rule Charter when they failed to timely pay all sums due and owing to employees represented by the Local;

b.     Declare Defendants violated the Home Rule Charter when they failed to deduct all agreed-upon deductions as authorized by employees represented by the Local and required by taxing authorities and remit those sums to the appropriate entity.

23

## COUNT III
## VIOLATIONS OF THE MINIMUM WAGE PROVISIONS OF
## THE FAIR LABOR STANDARDS ACT
### (Plaintiff Jackson, individually v.
### Defendant City)

76.     Plaintiff Jackson hereby incorporate Paragraphs 1 through 75 herein as though set forth in their entirety.

77.     Sections 206(a) and 207 of the FLSA, 29 U.S.C. §§ 206(a), 207, and related regulations, 29 CFR § 531.1-531.40, provide in relevant part that every covered employer shall pay to each of his nonexempt employees' wages at a rate not less than the minimum wage and one and one-half times the regularly hourly rate for hours worked over forty (40) hours, *i.e.*, overtime.

78.     Section 216(b) of the FLSA, 29 U.S.C. § 216(b), provides in relevant part that any employer who violates the provisions of Sections 206(a) and 207 shall be liable to the employee affected in the amount of their unpaid minimum and/or overtime wages and an additional equal amount for liquidated damages.

79.     Each act by the Defendants in failing to pay the statutorily required minimum wage and/or overtime for the bargaining unit employees represented by the Local constitutes a violation of the FLSA.

80.     Plaintiff Jackson consented to be part of this action pursuant to 29 U.S.C. §216(b). A true and correct copy of this Plaintiff's signed consent form is attached to this Complaint as Exhibit "D" and incorporated by reference.

24

81.     Plaintiff Jackson, since March 25, 2019, is a full-time employee for the Streets Department who on occasion was not paid timely, or at all, the statutorily required minimum wage over a pay period.

82.     Specifically, beginning on or about April 5, 2019, Plaintiff Jackson, received no wages or wages less than minimum wage for work performed for the City's Street Department in a two-week pay period, in violation of the minimum wage provisions of the FLSA.

83.     Defendant knew that Plaintiff Jackson was working as full-time employees for the Streets Department.

84.     Because Plaintiff Jackson worked full-time during each pay period, Defendant City, under the FLSA, was required to compensate him for all hours up to forty (40) hours of straight time that they worked.

85.     Defendant knowingly violated the FLSA when it failed to pay Plaintiff Jackson in a timely manner for the straight-time hours he worked in a pay period.

86.     Defendant knowingly violated the FLSA when it failed to pay Plaintiff Jackson in a timely manner minimum wage for all straight-time hours worked in a pay period.

87.     Each instance by the Defendant City to fail to timely pay Plaintiff Jackson minimum wage for all straight-time hours worked in a pay period was a

violation of the FLSA even if the City paid the minimum wages at a later time.

88.     Defendant City knowingly violated the FLSA because it knew that Plaintiff Jackson was not getting paid timely for minimum wage for all straight-time hours worked in a pay period.

89.     Despite knowing that Plaintiff Jackson was not going to receive paid minimum wage for all straight-time hours worked in a pay period, Defendant City allowed the FLSA violations to occur.

**WHEREFORE**, based on the foregoing allegations, Plaintiff Jackson requests this Court to order the following relief:

a.     Grant judgment in their favor and award them compensatory damages, pre-judgment and post-judgment interest and liquidated damages;

b.     Award attorneys' fees;

c.     Award any other relief the Court deems necessary.

**COUNT IV**
**VIOLATIONS OF THE OVERTIME PROVISIONS OF THE**
**FAIR LABOR STANDARDS ACT**
**(Campbell and Randolph, individually v.**
**Defendant City)**

90.     Plaintiffs hereby incorporate Paragraphs 1 through 89 herein as though set forth in their entirety.

91.     Sections 206(a) and 207 of the FLSA, 29 U.S.C. §§ 206(a), 207, and related regulations, 29 CFR § 531.1-531.40, provide in relevant part that every

covered employer shall pay to each of his nonexempt employees' wages at a rate not less than the minimum wage and one and one-half times the regularly hourly rate for hours worked over forty (40) hours, *i.e.*, overtime.

92.    Section 216(b) of the FLSA, 29 U.S.C. § 216(b), provides in relevant part that any employer who violates the provisions of Sections 206(a) and 207 shall be liable to the employee affected in the amount of their unpaid overtime wages and an additional equal amount for liquidated damages.

93.    Each act by Defendant City in failing to pay the statutorily required overtime for bargaining unit employees represented by the Local constitutes a violation of the FLSA.

94.    Plaintiffs Campbell and Randolph have consented to be a part of this action pursuant to 29 U.S.C. § 216(b).  True and correct copies of these Plaintiffs' signed consent forms are attached to this Complaint as Exhibit "E" and incorporated by reference.

95.    Plaintiffs Campbell and Randolph, since March 25, 2019, were full-time employees of Defendant City who worked in excess of the applicable number of maximum hours under the FLSA and regulated regulation to qualify for overtime.

96.    Specifically, beginning on or about April 5, 2019, Plaintiffs Campbell and Randolph received a paycheck that covered a work week in which they worked

in excess of forty (40) hours but were not timely paid in full for their overtime hours.

97.   Defendant City knew that Plaintiffs Campbell and Randolph were working in excess of forty (40) hours during work weeks.

98.   Because Plaintiffs Campbell and Randolph worked in excess of forty (40) hours during a work week, Defendant City, under the FLSA, was required to compensate then at a rate of one and a half times their hourly rate for time worked in excess of forty (40) hours.

99.   Defendant City knowingly violated the FLSA when it failed to pay Plaintiff Campbell and Randolph in a timely manner for all time worked in excess of forty (40) hours.

100.   Defendant City knowingly violated the FLSA when it failed to pay Plaintiffs Campbell and Randolph in a timely manner at a rate of one and a half times their hourly rate for time worked in excess of forty (40) hours in a work week.

101.   Each instance by Defendant City to fail to timely pay Plaintiffs Campbell and Randolph their overtime was a violation of the FLSA even if the City paid the overtime wage at a later time.

102.    Defendant knowingly violated the FLSA because it knew that Plaintiffs Campbell and Randolph were not timely getting paid in full for overtime

28

since the OnePhilly system started to run on March 25, 2019.

103.   Despite knowing that Plaintiffs Campbell and Randolph were not going to get paid overtime wages in full and in a timely manner, Defendant City allowed the FLSA violations to occur.

**WHEREFORE**, based on the foregoing allegations, Campbell and Randolph request this Court to order the following relief:

a.   Grant judgment in their favor and award them compensatory damages, pre-judgment and post-judgment interest and liquidated damages;

b.   Award attorneys' fees;

c.   Award any other relief the Court deems necessary.

**COUNT V**
**COLLECTIVE ACTION**
**VIOLATIONS OF THE MINIMUM WAGE PROVISIONS OF THE FAIR LABOR STANDARDS ACT**
**(Plaintiff Jackson, on behalf of similarly situated individuals v. Defendant City)**

104.   Plaintiff Jackson hereby incorporates Paragraphs 1 through 103 herein as though set forth in their entirety.

105.   Plaintiff Jackson, on behalf of similarly situated individuals, files this collective action under 29 U.S.C. § 216.

106.   The employees similarly situated in this collection action are:

All persons since March 25, 2019, who (a) are, have been, or will be employed by the City of Philadelphia in the Streets

Department, (b) are covered employees under the Fair Labor
Standards Act, (c) are bargaining unit employees of AFSCME
Local 427, (d) during any pay period, were not paid minimum
wage for straight-time hours worked in a pay period, and (e)
filed a consent to join this action pursuant to 29 U.S.C. §
216(b).

107.   Members of the proposed collective are known to Defendant City and
are readily identifiable through its records.

108.   Plaintiff Jackson and the proposed collective members are all non-
exempt employees under the FLSA.

109.   Plaintiff Jackson and the proposed collective members are employed
by Defendant City as defined under the FLSA.

110.   Plaintiff Jackson has consented to be a part of this action pursuant to
29 U.S.C. § 216(b). *See* Exhibit "D."

111.   Defendant City is an employer who must follow the regulations set
forth in the FLSA.

112.   Defendant City allowed Plaintiff Jackson to work up to forty (40)
hours a week at straight time without promptly paying him at least minimum wage
for those hours.

113.   Defendant City knew that Plaintiff Jackson and the proposed
collective were working up to forty (40) hours a week straight time without
promptly paying them at least minimum wage for those hours.

114.   Defendant City is aware of the requirements under the FLSA to timely pay non-exempt employees like Plaintiff Jackson and the proposed collective minimum wage for all straight hours worked in a pay period.

115.   Defendant City knowingly violated the FLSA by failing to timely pay Plaintiff Jackson and similarly situated individuals' minimum wages for all straight time hours worked in a pay period.

116.   Each instance by Defendant City to fail to timely pay the proposed collective are all victims of the systemic failure by Defendant City to timely pay minimum wages for all straight time worked in a pay period was a violation of the FLSA, even if the City paid those minimum wages at a later time.

117.   Plaintiff Jackson and the proposed collective are all victims of the systemic failure by the City to minimum wage for all straight time worked in a pay period after implementing the OnePhilly payroll system.

118.   Defendant City treated all persons in the collective equally and all persons in the collective endured similar FLSA violations by the Defendant City as a result of not getting timely paid minimum wage for all straight time worked in a pay period.

119.   Defendant City is therefore liable to the collective for unpaid minimum wages, as well as liquidated damages under the FLSA for its failure to timely pay Plaintiff Jackson and the proposed collective minimum wages.

31

120.   Notice of this collective action should be sent to all potential collective members.  There are potentially as many as over a hundred affected individuals who may be unaware of their legal rights against Defendant City and can benefit from opting into this action to collect their wages and/or liquidated damages under the FLSA.

**WHEREFORE**, based on the foregoing allegations, Plaintiff Jackson on behalf of similarly situated individuals request this Court to order the following relief:

a.     Designate this action as a collective action on behalf of similarly situated individuals and to promptly issue notice to all similarly situated individuals;

b.     Grant judgment in their favor of Plaintiff Jackson and similarly situated individuals;

c.     Award Plaintiff Jackson and similarly situated individuals compensatory damages, pre-judgment and post-judgment interest, and liquidated damages;

d.     Award attorneys' fees and costs;

e.     Award reasonable compensation to Plaintiff Jackson;

f.     Award any other relief, including declaratory and injunctive relief, that this Court deems necessary.

## COUNT VI
## COLLECTIVE ACTION
## VIOLATIONS OF THE OVERTIME PROVISIONS OF
## THE FAIR LABOR STANDARDS ACT
### (Plaintiffs Campbell and Randolph, on behalf of similarly situated individuals v. Defendant City)

121.   Plaintiffs Campbell and Randolph hereby incorporate Paragraphs 1 through 120 herein as though set forth in their entirety.

122.   Plaintiffs Campbell and Randolph, on behalf of similarly situated individuals, files this collective action under 29 U.S.C. § 216.

123.   The employees similarly situated in this collection action are:

> All persons since March 25, 2019, who (a) are, have been, or will be employed by the City of Philadelphia in the Streets Department, (b) are covered employees under the Fair Labor Standards Act, (c) are bargaining unit employees of AFSCME Local 427, (d) during any pay period, were not paid all overtime for hours worked in excess of forty (40) hours in any work week, and (e) filed a consent to join this action pursuant to 29 U.S.C. § 216(b).

124.   Members of the proposed collective are known to Defendant City and are readily identifiable through its records.

125.   Plaintiffs Campbell and Randolph and the proposed collective members are all non-exempt employees under the FLSA.

126.   Plaintiffs Campbell and Randolph and the proposed collective members are employed by Defendant City as defined under the FLSA.

127.   Plaintiffs Campbell and Randolph have consented to be a part of this action pursuant to 29 U.S.C. § 216(b). *See* Exhibit "E."

128.   Defendant City is an employer who must follow the regulations set forth in the FLSA.

129.   Defendant City allowed Plaintiffs Campbell and Randolph and the proposed collective to work in excess of forty (40) hours in any work week without timely paying them overtime.

130.   Defendant City knew that Plaintiffs Campbell and Randolph and the proposed collective were working in excess of forty (40) hours during a work, and Defendant City knowingly failed to timely pay, in full, Plaintiffs Campbell and Randolph and the proposed collective overtime wages for time worked in excess of forty (40) hours in a work week.

131.   Defendant City is aware of the requirements under the FLSA to timely pay non-exempt employees like Plaintiffs Campbell and Randolph and the proposed collective overtime wages as defined by the FLSA.

132.   Defendant City knowingly violated the FLSA by failing to timely pay Plaintiffs Campbell and Randolph and similarly situated individuals overtime wages.

133.    Each instance by the City to fail to timely pay the collective overtime wages was a violation of the FLSA, even if the City paid overtime wages at a later stage.

134.    Plaintiffs Campbell and Randolph and the proposed collective are all victims of the systemic failure by the City to timely pay overtime wages in full after implementing the OnePhilly payroll system.

135.    Defendant City treated all persons in the collective equally and all persons in the collective endured similar FLSA violations by the Defendant City as a result of not getting timely paid their owed overtime wages in a timely manner.

136.    Defendant City is therefore liable to the collective for unpaid overtime wages, as well as liquidated damages under the FLSA, for its failure to timely pay Plaintiffs Campbell and Randolph and the proposed collective overtime wages in full.

137.    Notice of this collective action should be sent to all potential collective members.  There are potentially over a hundred affected individuals who may be unaware of their legal rights against Defendant City and can benefit from opting into this action to collect their wages and/or liquidated damages under the FLSA.

**WHEREFORE**, based on the foregoing allegations, Campbell and Randolph on behalf of similarly situated individuals request this Court to order the following relief:

a.      Designate this action as a collective action on behalf of similarly situated individuals and to promptly issue notice to all similarly situated individuals;

b.      Grant judgment in their favor of Campbell and Randolph and similarly situated individuals;

c.      Award Plaintiffs Campbell and Randolph and similarly situated individuals' compensatory damages, pre-judgment and post-judgment interest, and liquidated damages;

d.      Award attorneys' fees and costs;

e.      Award reasonable compensation to Campbell and Randolph;

f.      Award any other relief, including declaratory and injunctive relief,

that this Court deems necessary.

Respectfully submitted,

/s/ John R. Bielski
John R. Bielski
PA Attorney ID 86790
Jessica R. Brown
PA Attorney ID 87322
WILLIG, WILLIAMS & DAVIDSON
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
215-656-3600
jbielski@wwdlaw.com
jbrown@wwdlaw.com

*Counsel for Plaintiffs*